UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROBINSON LABS, INC.,

Plaintiff,

v.

WALLS INDUSTRIES, INC.,

Defendant.

CIVIL NO. 01-1604 (RHK/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on January 4, 2002 upon Plaintiff's Motion for Preliminary Injunction [Docket No. 2]. Eric H. Chadwick, Esq. appeared on behalf of Plaintiff; Michael E. Florey, Esq. and Ann Cathcart Chaplin, Esq. appeared on behalf of Defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

## FINDINGS OF FACT/REPORT

Plaintiff and Defendant sell camouflaged garments for use by hunters. Plaintiff is the owner of U.S. Patent No. 5,695,835. The Complaint alleges that Defendant sells garments which infringe that patent. The matter is presently before the Court on Plaintiff's Motion for a Preliminary Injunction prohibiting Defendant from marketing any "multi-dimensional camouflaged garments." Upon the following Findings of Fact/Report, it is recommended that the Motion for a Preliminary Injunction be denied

## I. APPLICABLE LEGAL PRINCIPLES

In considering the Motion, we have applied the following familiar legal principles: a preliminary injunction is expressly authorized by the provisions of 35 U.S.C. § 283. "To obtain an injunction, a party must prove four factors: (1) its

FILED FEB 06 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

reasonable likelihood of success on the merits; (2) irreparable harm to its interests; (3) the balance of hardships tipping in its favor; and (4) public interest in favor of the injunction." Glaxo Group Ltd. v. Ranbaxy Pharmaceuticals, Inc., 262 F.3d 1333, 1335-36 (Fed. Cir. 2001).[1] "In matters involving patent rights, a strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee." Toro Company v. White Consolidated Industries, Inc., 920 F. Supp. 1008, 1019 (D. Minn.1996). "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

In J. Reebok Intern. Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556 (Fed. Cir. 1994), the Court refined these considerations as follows: "Because, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits and irreparable harm (keeping in mind the burden shifting rule discussed below), the district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors. . . . While a district court must consider all four factors before granting a preliminary injunction to determine whether the moving party has carried its burden of establishing each of the four, we specifically decline today to require a district court to articulate findings on the third and fourth factors when the court denies a preliminary injunction because a party fails to establish either of the two critical factors."

---

[1] The standard stated by the Federal Circuit is virtually identical to that of the Eighth Circuit in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981).

In Reebok, the Court concluded that it was permissible to deny a Motion for a Preliminary Injunction based solely upon the failure of the moving party to establish irreparable harm, but in doing so, the moving party must be given the benefit of the presumption of harm that comes with a finding of likelihood of success on the merits.[2] See also Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 974 (Fed. Cir. 1996).

In many cases, like this one, the decision of the district court to focus on the question of irreparable harm is not only permissible, it is desirable from the point of view of judicial economy. If it may be plainly seen that the presumption of irreparable harm has been overcome, there is little value in having the Court exercise a complicated and extensive, but necessarily tentative and non-binding consideration of the likelihood of prevailing on the merits. Whatever the Court has to say in this regard in the context of a decision on a Motion for Preliminary Injunction will in most cases be tested again on a

---

[2] The Court stated:

> "This is not to say, however, that a trial court, before denying a preliminary injunction motion, must always make a finding on a movant's likelihood of success to avoid vacatur, no matter what the evidence regarding irreparable harm. Although such an approach is preferable for reasons of judicial economy and greatly aids appellate review, an alternative analysis is permissible. We hold the district court may find that, even giving movant the benefit of the presumption of irreparable harm, the non-moving party has presented evidence sufficient to rebut the presumption. In such a case, the movant has not established irreparable harm and is not entitled to a preliminary injunction.
>
> "District judges are overburdened and need flexibility to operate efficiently. They deserve tolerance by reviewing courts so they can tailor procedures of adjudication to the case at hand. We do hold, however, that if, in adjudicating irreparable harm, the district court has declined to make findings on likelihood of success, the court must give the movant the benefit of the presumption before denying a motion requesting a preliminary injunction."

Reebok, 32 F.3d at 1557.

Motion for Summary Judgment, and perhaps again at trial. In some circumstances, it will also be tested in the context of a hearing held under Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). Under these circumstances, a decision of the District Court as to the likelihood of prevailing on the merits, made early in the litigation, in the context of deciding whether a party is likely to prevail on the merits, takes on the character of an advisory opinion which serves neither the parties, the court, nor the orderly judicial process.[3]

## II. PROCEDURAL HISTORY

The Complaint was filed on August 3, 2001, and the Motion for a Preliminary Injunction was filed soon after. In the moving papers, Plaintiff briefly summarized the legal reasons why it urged that it was likely to prevail on the merits, and relied solely upon the presumption of harm as to the issue of irreparable harm. [Docket No. 2]. In its Motion for Expedited Discovery and supporting papers, Defendant made it clear that one of its principal arguments against the issuance of a preliminary injunction would be based upon the alleged absence of irreparable harm. See Docket Nos. 9, 10 and 11. By Order dated October 16, 2001, this Court permitted Defendant to seek expedited discovery on "whether Plaintiff's reliance on the presumption of irreparable harm is weakened in this case, because Plaintiff has yielded it's power to exclude by entering into many license

---

[3] The Toro case is illustrative. The District Court conducted an extensive analysis and concluded that the plaintiff was likely to prevail, but then concluded that the presumption of irreparable harm was overcome, so it denied the injunction. Toro, 920 F. Supp. 1008. The liability merits were later again considered by the District Court when it granted summary judgment of infringement in favor of plaintiff. On appeal, this decision was reversed, and the case was remanded. Toro Co. v. White Consol. Industries, Inc., 199 F.3d 1295 (Fed. Cir. 1999). After remand, the District Court considered the matter, and granted summary judgment of non-infringement to defendant. This decision was also reversed. Toro Co. v. White Consol. Industries, Inc., 266 F.3d 1367 (Fed. Cir. 2001).

agreements . . . and facts bearing upon any delay by Plaintiff in commencing suit, and after commencing suit, any delay in seeking the preliminary injunction." [Docket No. 15]. Plaintiff appealed, asserting among other things that the discovery should be limited to liability issues, but the Order was affirmed.

Given this procedural development, Plaintiff was allowed to supplement its initial Motion for a Preliminary Injunction. In these pleadings, [Docket Nos. 30, 31, 32 and 33], Plaintiff again presented its view on the likelihood of prevailing on the merits, but also offered the Affidavit of Scott Shultz, President of Plaintiff, and various exhibits in support of the claim of irreparable harm. Defendant's Response is in Docket Nos. 48 through 58. No Reply was filed. Oral argument was held on January 4, 2002.

## III. ANALYSIS

The task of the district court in these circumstances is to determine whether the presumption of irreparable harm is overcome by the evidence. This matter is scheduled to commence trial on April 1, 2003, so the question is whether Plaintiff will suffer irreparable harm if no injunction is granted until the conclusion of the trial. There are no fixed rules applicable to the determination of that issue, but the Polymer court suggested some of the alternative factors which would warrant such a finding:

> "Various types of evidence have been found sufficient for this purpose. For example, the presumption may be rebutted by evidence that (1) the non-movant has or will soon cease the allegedly infringing activities, . . ., thus making an injunction unnecessary; (2) movants have engaged in a pattern of granting licenses under the patent, . . . such that it may be reasonable to expect that invasion of the patent right can be recompensed with a royalty rather than with an injunction; or (3) movants unduly delayed in bringing suit, thereby negating the idea of irreparability."

Polymer, 103 F.3d at 974. The second factor was established by Defendant in this case.

Plaintiff points out that in Polymer, the Court concluded that the availability of monetary damages was an insufficient legal remedy where the infringer is coming in to the marketplace and setting a lower price. They call attention to the following reasoning in that opinion:

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

Polymer, 103 F.3d at 975-76. Plaintiff argues: "The price selling point of [Plaintiff's] products has been devalued, perhaps permanently, and [Defendant's] infringing actions will have long-lasting deleterious effects on the value of the '835 patent. . . . Like the movant in Polymer, [Plaintiff] will suffer great harm if forced to endure the ongoing lower prices offered by [Defendant] to consumers."

There are several difficulties with Plaintiff's argument. The evidence offered by Plaintiff does not establish that it has lost sales to Defendant, or that it will in the period prior to the trial, nor that the prices of Defendant's products have an impact on the prices of Plaintiff's products. The evidence establishes that Defendant does not compete with Plaintiff. Shultz Depo. p. 48, ff. 2-6. Plaintiff's product contains a scent, and is materially different from Defendant's product. It is also different from the products of Plaintiff's licensees.

The wholesale and retail prices of the products at issue are as follows:[4]

| | Wholesale | Retail |
|---|---|---|
| Plaintiff's | $203 | $290 |
| Plaintiff's Licensees' | $65 | $80 |
| Defendant's | $50 | $?? |

While it appears that the products offered by Defendant are sold at a price less than Plaintiff's products are offered, the dilution of which Plaintiff complains comes as much from the companies Plaintiff has licensed to use the patent at issue as it does from Defendant. An injunction prohibiting Defendant from selling the camouflaged garments would not serve to preserve the higher prices which Plaintiff seeks for its own products.

Many cases also take into consideration the question of whether the Defendant will be financially able to respond in damages. E.g. High-Tech, 49 F.3d at 1557; Toro, 920 F. Supp. at 1020. Here, Defendant has established that it has the financial capability to respond to any damages incurred by Plaintiff if a preliminary injunction is denied.

These facts provide a context for the cases which hold that where a patentee has granted licenses to others to practice the invention, it has yielded exclusivity in return for the royalties (or damages in the form of royalties) which the licensing of an invention will yield. The Polymer court held that this factor was relevant, but on the facts of that case, it found that there has been no such pattern of licensing. Other cases have concluded that irreparable harm is absent under circumstances similar to the facts in this case. We adopt the reasoning of the court in High-Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551, 1557 (Fed. Cir. 1995), modifying its opinion to

---

4

See Affidavit of Scott Shultz, paragraphs 2, 3 and 4.

reflect facts applicable to the case now under consideration:

> "There also is no indication in the record that [Plaintiff] needs an injunction to protect its right to refuse to exploit its invention commercially or to prevent others from doing so. To the contrary, the evidence shows that [Plaintiff] offered a license to [one company, and granted licenses to five other companies], so it is clear that [Plaintiff] is willing to forgo its patent rights for compensation. That evidence suggests that any injury suffered by [Plaintiff] would be compensable in damages assessed as part of the final judgment in the case."

These principles and facts overcome the general proposition that the mere availability of monetary damages is not alone enough to establish the absence of irreparable harm.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Plaintiff's Motion for a Preliminary Injunction [Docket No. 2] be denied.

Dated: February 6, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before February 22, 2002 written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before February 22, 2002.