UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

01-1604 (JEL/JGL)

ROBINSON LABS, INC., )
Plaintiff )
v. ) ORDER
WALLS INDUSTRIES, INC., )
Defendant. )

---

Eric Chadwick, Esq., and Randall Skaar, Esq., appeared for Plaintiff Robinson Labs, Inc.

Michael Florey, Esq., and Ann Cathcart Chaplin, Esq. appeared for Defendant Walls Industries, Inc.

---

THIS MATTER came before the undersigned Judge of the District Court on July 16, 2002, for a hearing on Plaintiff's motion for claim construction pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995). After consideration of the parties' pleadings, the Court has defined the claims terms.

1. Background

This case involves the alleged infringement of a patent on a hunting jacket designed for bow hunters. The patent in question, United States Patent 5,695,835 (the '835 Patent), is owned by Plaintiff, Robinson Labs, Inc. ("Robinson"). Robinson acquired the patent on its "Multi Dimensional Camouflaged Garment" on December 9, 1997. The Defendant, Walls Industries, Inc. ("Walls"), has sold outdoor clothing and camouflage garments for over 50 years. On February 1, 2001, Robinson informed Walls that one of Walls' jackets appeared to infringe upon the '835 Patent. The parties agreed upon a one-time license for the garments in question. As the parties attempted to reach a long-term licensing agreement, Walls redesigned its jacket to avoid Robinson's infringement allegations. No long-term licensing agreement was reached and Walls began selling its redesigned jacket. Robinson alleges that Walls' new jacket infringes upon the '835 Patent, as

AUG 0 2 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

well.

The '835 Patent contains 10 claims. The parties disagree about the construction of Claims 1 through 9, which contain 6 disputed terms. The 6 disputed terms are: "multi-dimensional," three dimensional," "two dimensional," "forward facing portion," "rear(ward) facing portion," and "forward facing arm portion." Although the parties agree on the meaning of the term "instrumentality," they ask the Court to define that term, as well.

2. Claim Interpretation and Infringement

Issues of claim construction are resolved as questions of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). When construing construction claims, the Court looks first to the intrinsic evidence of record -- the claims, the specification, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If the claim remains unclear, the Court may then consider extrinsic evidence. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995). Absent an express intent to bestow a novel meaning to a claim term, terms are to be given their ordinary meaning. *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1334 (Fed. Cir. 2000).

a. Multi-dimensional

After careful consideration of the parties' submissions and oral arguments on the subject, the Court defines "multi-dimensional" as "having both a two dimensional material external surface portion and a three dimensional material external surface portion." In so defining "multi-dimensional," the Court substantially adopts the definition proposed by Walls.

Robinson argues that "multidimensional" should be given its ordinary meaning. Accordingly, Robinson proposed that "multidimensional" be construed to mean "of, or relating to, or having several dimensions." Robinson maintains that this definition merely reflects "the reality that we live in a multi-dimensional world." The Court rejects this argument for several reasons.

First, when defining a claim term, the Court looks first to the language of the claim itself. *Mycogen Plant Science v. Monsanto Co.*, 243 F.3d 1316, 1327 (Fed. Cir. 2001). Claim 1 of the '835

Patent claims, in relevant part, "a multi-dimensional camouflaged garment...comprising: a garment external surface,...having a first portion and a second portion; the first portion...being formed of...three dimensional material; and the second portion...being formed of...two dimensional material." The structure of Claim 1 supports the Court's construction of the term.

Secondly, the prosecution history supports this construction, as well. Words of ordinary usage must be construed in the context of the patent documents. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999). The prosecution history reveals that Robinson attempted to design the '835 patent around two other patents, the Yacovella patent (4,656,065) and the Slagle patent (5,445,863). On April 7, 1997, Robinson filed an Amendment to its patent application. In the Remarks to the Amendment, Robinson explained that the Yacovella patent involved the use of two-dimensional material and the Slagle patent involved the use of three-dimensional material. In contrast, Robinson proposed the use of two-dimensional and three-dimensional materials in the same garment. The prosecution history supports the Court's construction of "multi-dimensional."

Thirdly, the dispute with respect to other claim terms favors a rejection of Robinson's suggestion that the Court use the ordinary meaning of "multi-dimensional." Robinson's proposed definition of "multi-dimensional" encompasses both two-dimensional objects and three-dimensional objects. Because both "two-dimensional" and "three-dimensional" are among the disputed terms in the patent, the Court declines to adopt a definition of "multi-dimensional" that is redundant with respect to these other terms.

Finally, common sense dictates that the ordinary meaning of "multi-dimensional" be rejected. Robinson's patent is for a "Multi Dimensional Camouflaged Garment." If Robinson's proposed definition of "multi-dimensional" is adopted, the term becomes superfluous. Since all garments are multi-dimensional, every camouflaged garment is a multi-dimensional camouflaged garment.

b. Two-dimensional

After careful consideration of the parties' submissions and oral arguments on the subject, the Court defines "two-dimensional" as "having height and width and having a generally negligible

thickness dimension in comparison to the height and width dimensions." In so defining "two-dimensional," the Court substantially adopts the definition proposed by Robinson.

With respect to this term, the patent applicant elected to be a lexicographer. When a patent applicant elects to be a lexicographer by providing an explicit definition in the specification for a claim term, the definition by the patent applicant controls. *Renishaw PLC v. Marposs Societa 'Per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). Because "two-dimensional" was clearly, precisely, and deliberately defined in the patent, the Court has adopted the patent applicant's lexicography. *See id.*

c. Three-dimensional

After careful consideration of the parties' submissions and oral arguments on the subject, the Court defines "three-dimensional" as "offering depth and dimension that is apart from the thickness of the material used." In so defining "three-dimensional," the Court has adopted the definition proposed by Walls.

Again, the patent applicant elected to be a lexicographer and the Court has adopted the clear, precise and deliberate definition of the patent applicant. Furthermore, this definition is consistent with the prosecution history. As discussed above, the Remarks in the April 7, 1997 Amendment to the patent application described the material involved in the Slagle patent as "three-dimensional." The Court's definition includes the type of material discussed in Slagle.

The Court has rejected Robinson's proposed definition for two reasons. First, Robinson has proposed a definition that differs from the one contained in the patent itself. Secondly, Robinson proposes to limit the scope of "three-dimensional" material to "non-removable material placed in a substantially similar pattern over a portion of a garment." In the Court's opinion, such a definition ignores the prosecution history and would prevent "three-dimensional" from describing the material used in the Slagle patent.

d. Forward Facing Portion

After careful consideration of the parties' submissions and oral arguments on the subject, the

Court defines "forward facing portion" as "a part of a garment that, when worn in a normal manner, appears on the front of the wearer." In so defining "forward facing portion," the Court has rejected the definitions proposed by Robinson and Walls.

With respect to this term, the patent applicant did not act as a lexicographer. Accordingly, the Court attempted to give the words their ordinary meaning. *Optical Disc Corp., supra*. The Court faced two problems in construing this term. The first problem, which was at the heart of the dispute between the parties, involved construing the word, "portion." The second problem involved explaining what was meant by the phrase, "forward facing."

In essence, Walls asked the Court to construe "portion" as synonymous with "half." Robinson asked the Court to construe "portion" as synonymous with "part." The Court adopted the word "part"for two reasons. First, "part" more accurately portrays the ordinary meaning of the word, "portion." Secondly, construing "portion" to mean "half" does not make sense in the context of the patent as a whole. As was discussed above, Claim 1 explains that the garment has two *portions*; the first *portion* is made of three-dimensional material and the second *portion* is made of two-dimensional material. Nothing in the patent suggests that *half* of the garment is made of three-dimensional material and that the other *half* is made of two dimensional material. In the context of Claim 1, "portion" means "part." Claim 3 goes on to state that "the garment has at least a torso, the torso having a chest portion." Similar language appears in Claims 4 and 5; Claims 7 through 9 discuss the right and left chest portions of the torso. Nothing in the patent suggests that the chest *portion* of the torso constitutes *half* of the torso; the chest *portion* is merely a *part* of the torso.

With respect to the phrase "forward facing," Robinson proposed that it be described as "turned or directed toward the front." Walls proposed "with the front being the portion intended to be worn on the front of the wearer." The Court finds Walls' proposal more helpful in that it incorporated the notion that garments serve a function and, thus, are designed to be worn in a particular way. In contrast, under Robinson's definition, a person wearing a garment in an unorthodox manner could have the back of the garment turned or directed toward the front.

However, while the Court acknowledges a teleology of garments, it declines to incorporate a notion of intent in its definition. Instead, the Court's definition implicitly assumes that garments are designed to be worn in a certain way; when the garment is worn in a normal manner, the "forward facing" portion of the garment appears on the front of the wearer.

e. Rear(ward) Facing Portion

For the reasons expressed in the Court's discussion of the term, "forward facing portion," the Court defines "rear facing portion" and "rearward facing portion" as "a part of a garment that, when worn in a normal manner, appears on the back of the wearer."

f. Forward Facing Arm Portion

For the reasons expressed in the Court's discussion of the term, "forward facing portion," the Court defines "forward facing arm portion" as "a part of a garment that, when worn on the arm in a normal manner, appears on the front of the wearer."

g. Instrumentality

The parties agree that the term, "instrumentality," should be defined as "a device that during use may become entangled with a worn garment." The Court adopts the proposed definition and construes it as such.

III. Conclusion

Based on the foregoing, IT IS ORDERED that:

1. Plaintiff's Motion for Claim Construction be GRANTED IN PART AND DENIED IN PART [Docket No. 74].

Dated: August 2, 2002

JOAN E. LANCASTER
United States District Judge