UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
File No. 01-CV-1604 (JEL/JGL)

ROBINSON LABS, INC.,

Plaintiff

v. ORDER

WALLS INDUSTRIES, INC.,

Defendant.

---

Eric Chadwick, Esq., and Randall Skaar, Esq., appeared for Plaintiff Robinson Labs, Inc. Michael Florey, Esq., and Ann Cathcart Chaplin, Esq. appeared for Defendant Walls Industries, Inc.

---

THIS MATTER came before the undersigned Judge of the District Court on July 16, 2002, for a hearing on Plaintiff's motion for claim construction pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995). On July 29, 2002, Plaintiff filed a Post-Markman Hearing Memorandum of Law Regarding Claim Construction. On August 12, 2002, Defendant filed a responsive memorandum; on August 19, 2002, Plaintiff filed a reply. After consideration of the evidence presented, the documents in the record, and the arguments of counsel, the Court has defined the claims' terms.

1. Background

This case involves the alleged infringement of a patent on a hunting jacket designed for bow hunters. The patent in question, United States Patent 5,695,835 (the '835 Patent), is owned by Plaintiff, Robinson Labs, Inc. ("Robinson"). Robinson acquired the patent on its "Multi Dimensional Camouflaged Garment" on December 9, 1997. Defendant, Walls Industries, Inc. ("Walls"), has sold outdoor clothing and camouflage garments for over 50 years. On February 1, 2001, Robinson informed Walls that one of Walls' jackets appeared to infringe upon the '835 Patent.



FILED SEP 1 1 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

The parties agreed upon a one-time license for the garments in question. As the parties attempted to reach a long-term licensing agreement, Walls redesigned its jacket to avoid Robinson's infringement allegations. No long-term licensing agreement was reached and Walls began selling its redesigned jacket. Robinson alleges that Walls' new jacket infringed upon the '835 Patent, as well.

The '835 Patent contains 10 claims. The parties disagree about the construction of Claims 1 through 9, which contain 6 disputed terms. The 6 disputed terms are: "multi-dimensional," three dimensional," "two dimensional," "forward facing portion," "rear(ward) facing portion," and "forward facing arm portion." Although the parties agree on the meaning of the term "instrumentality," they ask the Court to define that term, as well.

2. Claim Interpretation and Infringement

Issues of claim construction are resolved as questions of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). When construing construction claims, the Court looks first to the intrinsic evidence of record -- the claims, the specification, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If the claim remains unclear, the Court may then consider extrinsic evidence. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995). Absent an express intent to bestow a novel meaning to a claim term, terms are to be given their ordinary meaning. *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1334 (Fed. Cir. 2000).

a. Multi-dimensional

The term, "multidimensional," appears in the preamble to Claim 1 and in the body of Claim 7. Initially, the parties disagreed about whether the term needed to be construed. Robinson argued that the presence of the term in the preamble to Claim 1 did not constitute a limitation of the claim, making construction unnecessary. Walls has since agreed with this position. However, Walls maintains that the term needs to be construed, nonetheless, because it is used in the body of Claim 7. Walls argues that "multidimensional" should be defined as "having both (1) a two dimensional

material external surface portion and (2) a three dimensional material external surface portion." Robinson argues that "multidimensional" should be given its ordinary meaning. Accordingly, Robinson proposed that "multidimensional" be construed to mean "of, or relating to, or having several dimensions."

The Court concludes that, despite the parties' agreement that the preamble does not limit Claim 1, the Court must construe the term "multidimensional" because it appears in the body of Claim 7. After careful consideration of the parties' submissions and oral arguments on the subject, the Court construes "multi-dimensional" as "having both a two dimensional material external surface portion and a three dimensional material external surface portion." In so defining "multi-dimensional," the Court substantially adopts the definition proposed by Walls.

When defining a claim term, the Court looks first to the language of the claim itself. *Mycogen Plant Science v. Monsanto Co.*, 243 F.3d 1316, 1327 (Fed. Cir. 2001). Claim 7 of the '835 Patent claims, in relevant part, "a camouflaged garment...comprising: a multi-dimensional camouflaged garment exterior surface, having a first portion and a second portion." Claim 7 goes on to specify that "the...first portion [is] formed of a two dimensional material...[while]...the...second portion [is] formed of a three dimensional material." The language of Claim 7 is very similar to that of Claim 1, which claims, in relevant part, "a multi-dimensional camouflaged garment...comprising: a garment external surface,...having a first portion and a second portion; the first portion...being formed of...three dimensional material; and the second portion...being formed of...two dimensional material."

That the term appears in the preamble of Claim 1 and the body of Claim 7 supports Robinson's argument that "multidimensional" is not a technical term and should be given its ordinary meaning. At the same time, however, the inconsistent placement of "multidimensional" in these claims, coupled with the strong similarity in the claim language, suggests that what makes Robinson's garments "multidimensional" is that they are composed of two-dimensional and three-dimensional materials. Consequently, although the question of whether the preamble to Claim 1

constitutes a limitation of the claim is not in dispute, Walls' proposed definition suggests that, far from being a limitation on Claim 1, the preamble's language *precisely* describes the invented object subsequently described in the body of the claim. For that reason, Claim 1 provides the perfect lens through which to consider the use of "multidimensional" in the body of Claim 7.

Considering the proposed constructions of "multidimensional," it becomes apparent that the Court must decide between Robinson's ordinary definition, which renders the term superfluous, and Walls' technical definition, which renders it redundant. Thus, while the construction of this term may have no effect on the outcome of this case, the frequent use of the term in the patent suggests that the term is not superfluous. Walls' definition, while redundant, gives meaning to a prominent term in the patent. Accordingly, the Court will adopt Walls' proposal.

The prosecution history supports this construction of "multidimensional," as well. Words of ordinary usage must be construed in the context of the patent documents. *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999). The prosecution history reveals that Robinson attempted to design the '835 patent around two other patents, the Yacovella patent (4,656,065) and the Slagle patent (5,445,863). On April 7, 1997, Robinson filed an Amendment to its patent application. In the Remarks to the Amendment, Robinson explained that the Yacovella patent involved the use of two-dimensional material and the Slagle patent involved the use of three-dimensional material. In contrast, Robinson proposed the use of two-dimensional and three-dimensional materials in the same garment. These remarks suggest that the nature of Robinson's invention is the use of two-dimensional and three-dimensional materials in the same garment.

Finally, because both "two-dimensional" and "three-dimensional" are among the disputed terms in the patent, the Court rejects Robinson's suggestion that "multi-dimensional" be given its ordinary meaning. Robinson's proposed definition of "multi-dimensional" encompasses both two-dimensional objects and three-dimensional objects. Considering Robinson's proposed definition in the context of the patent as a whole, the Court declines to adopt a definition of "multi-dimensional" that is redundant with respect to these other terms.

b. Two-dimensional

Robinson argues that "two-dimensional" should be defined as "having height and width and having a generally negligible thickness dimension in comparison to the height and width dimensions thereof." Walls argues that "two-dimensional" be defined as "a material that is not three dimensional, and which has height and width and has a generally negligible thickness dimension in comparison to the height and width dimensions thereof."

With respect to this term, the patent applicant elected to be a lexicographer. The patent defined "two-dimensional" as "having height and width and having a generally negligible thickness dimension in comparison to the height and width dimensions." When a patent applicant elects to be a lexicographer by providing an explicit definition in the specification for a claim term, the definition by the patent applicant controls. *Renishaw PLC v. Marposs Societa 'Per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

Citing *Optical Disc Corp.*, Walls argues that "two-dimensional" should be given the meaning it would be given by persons experienced in the field, unless it is apparent from the patent that the inventor used a term with a different meaning. *See Optical Disc Corp.*, 208 F.3d at 1334. The parties subsequently submitted evidence on the question of whether "two-dimensional" had special meaning for people experienced in the field. The Court concludes that the meaning given by persons experienced in the field is irrelevant because, again, Robinson provided an explicit definition of this term. Either Robinson's explicit definition is the same as that given by persons experienced in the field and should be given that meaning, or his explicit definition is different from that given by persons experienced in the field and, thus, should be given that special meaning. In either case, under *Optical Disc Corp.*, the Court would adopt the definition contained in the patent.

Because "two-dimensional" was clearly, precisely, and deliberately defined in the patent, the Court has adopted the patent applicant's lexicography. *Renishaw*, 158 F.3d at 1249. Accordingly, the Court construes "two-dimensional" as "having height and width and having a generally negligible thickness dimension in comparison to the height and width dimensions thereof."

c. Three-dimensional

Robinson argues that "three-dimensional" should be defined as "offering depth and dimension, which is not negligible, that is apart from the thickness of the material used, and limited in scope to non-removable material placed in a substantially continuous pattern over a portion of the garment. Walls argues that "three-dimensional" should be defined as "offering depth and dimension that is apart from the thickness of the material used."

Again, the patent applicant elected to be a lexicographer and the Court will adopt the clear, precise and deliberate definition of the patent applicant. Furthermore, this definition is consistent with the prosecution history as it relates to the Slagle patent. As discussed above, the Remarks in the April 7, 1997 Amendment to the patent application described the material involved in the Slagle patent as "three-dimensional." The Court's definition includes the type of material discussed in Slagle.

Robinson argues, however, that the definition of "three-dimensional" should be modified to reflect the prosecution history. Robinson proposes to limit the scope of "three-dimensional" material to "non-removable material placed in a substantially similar pattern over a portion of a garment." These limitations were discussed in Remarks made in the October 8, 1996 Amendment to the patent application in an attempt to design around the Crawford patent (4,517,230). Robinson argues that its remarks during the prosecution history should be incorporated into the definition of "three-dimensional" and cites several cases in support of its position. *See Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319 (Fed. Cir. 2002); *Elkay Manufacturing Co. v. Ebco Manufacturing Co.*, 192 F.3d 973 (Fed. Cir. 1999); *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995); *Intervet Am., Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050 (Fed. Cir. 1989). The Court finds these cases to be distinguishable. Without analyzing these cases in depth, *Rheox*, *Elkay*, and *Intervet* are not cases in which the patent applicant acted as a lexicographer. While *Southwall* involved a patent applicant who was a lexicographer, that fact played no part in the Federal Circuit's decision.

Finally, while Robinson's proposed definition accurately incorporates the remarks made in

the October 8, 1996 Amendment, those remarks relate not to the definition of "three-dimensional" material, but to the *way* it is used in this invention.

Accordingly, the Court construes "three-dimensional" as "offering depth and dimension that is apart from the thickness of the material used."

d. Forward Facing Portion

Robinson argues that "forward facing portion" be defined as "a part that is turned or directed toward the front." Walls argues that this phrase should be defined as "the front half of any portion of a garment, for example the arm portion, with the front being the portion intended to be worn on the front of the wearer."

With respect to this term, the patent applicant did not act as a lexicographer. Accordingly, the terms are to be given their ordinary meaning. *Optical Disc Corp.*, 208 F.3d at 1334. The Court faces two problems in construing this term. The first problem, which was at the heart of the dispute between the parties, involved construing the word, "portion." The second problem involved explaining what was meant by the phrase, "forward facing."

In essence, Walls asks the Court to construe "portion" as synonymous with "half." Robinson asks the Court to construe "portion" as synonymous with "part." The Court will adopt the word "part"for two reasons.

First, "part" more accurately portrays the ordinary meaning of the word, "portion." Secondly, construing "portion" to mean "half" does not make sense in the context of the patent as a whole. As was discussed above, Claim 1 explains that the garment has two *portions*; the first *portion* is made of three-dimensional material and the second *portion* is made of two-dimensional material. Nothing in the patent suggests that *half* of the garment is made of three-dimensional material and that the other *half* is made of two dimensional material. In the context of Claim 1, "portion" means "part." Claim 3 goes on to state that "the garment has at least a torso, the torso having a chest portion." Similar language appears in Claims 4 and 5; Claims 7 through 9 discuss the right and left chest portions of the torso. Nothing in the patent suggests that the chest *portion* of the torso constitutes

*half* of the torso; the chest *portion* is merely a *part* of the torso.

Walls' argument in favor of construing "portion" as "half" relies on the drawings in the patent. The drawings in the patent show, for example, that the front half of each arm is made of two-dimensional material. Consequently, the "forward facing portion" of the arm is the front *half* of the arm. Robinson argues, however, that the patent also describes square-armed and octagonal-armed jackets, so long as a "forward facing portion" of the arm is made of two-dimensional material.[1] The Court rejects Walls' argument that the drawings in the patent require that "portion" be construed as "half."

The Federal Circuit has said that "an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) (*citing SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121, 227 USPQ 577, 585 (Fed.Cir.1985) (en banc)). The Federal Circuit has also stated that "the general rule...is that the claims of a patent are not limited to the preferred embodiment, unless by their own language." *Elkay*, 192 F.3d at 978 (*citing Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 973, 50 U.S.P.Q.2d 1465, 1469 (Fed. Cir. 1999)).

In this case, the patent says that the invention is shown "generally" in three of the drawings. The patent also provides that the invention is not limited to the style presented in the drawings, a waist length jacket, but could be designed as a coat, poncho, or parka. Finally, the patent states that "it is desirable to use the maximum amount of three dimensional material consistent with the objective of ensuring the safety of the wearer." Thus, the Court concludes that the claims have not limited themselves to a preferred embodiment. Instead, the patent makes clear that the drawings contained in the patent merely provide an example of the invention. To adopt Walls' position, the Court would have to ignore the holding in *Rexnord*, implying, for example, that a hunting jacket

---

[1]Actually, regarding the square-armed and octagonal-armed jacket, Robinson argues that only the most forward facing portion of the front of the sleeve would be the "forward facing portion." In the Court's view, this position is too restrictive. The language of the patent suggests that any portion of the front half of the sleeve could be the "front facing portion."

identical to the one in the '835 patent, *except* that only *one-third* of the front *half* of the sleeve is made of two-dimensional material, would constitute a new invention. On the contrary, the '835 patent suggests that such a design is "desirable." Accordingly, the Court concludes that Walls' reliance on the patent drawings is misplaced.

With respect to the phrase "forward facing," Robinson proposed that it be construed as "turned or directed toward the front." Walls proposed that it be construed as "with the front being the portion intended to be worn on the front of the wearer." The Court finds Walls' proposal more helpful in that it incorporated the notion that garments serve a function and, thus, are designed to be worn in a particular way. However, while the Court acknowledges a teleology of garments, it declines to incorporate a notion of intent in its definition. Instead, the Court's definition will implicitly assume that a garment is designed to be worn in a certain way; when the garment is worn in a normal manner, the "forward facing" portion of the garment appears on the front of the wearer.

The Court has rejected Robinson's proposal because it is slightly confusing. As Walls argues, Robinson's definition suggests that the definition of "forward facing" depends upon how the garment is worn. To the contrary, Robinson argues that the phrase, "turned or directed toward the front," does not describe the way a garment is worn. Instead, it describes the relation of the parts of the garment to *itself*. While such a description would be perfectly adequate, such a meaning is not clear from Robinson's proposed construction. The advantage of the Court's construction is that the orientation of the garment is explicitly described in relation to a specific object, i.e. a hypothetical wearer.

Accordingly, after careful consideration of the parties' submissions and oral arguments on the subject, the Court defines "forward facing portion" as "a part of a garment that, when worn in a normal manner, appears on the front of the wearer." In so defining "forward facing portion," the Court has rejected the definitions proposed by Robinson and Walls.

e. <u>Rear(ward) Facing Portion</u>

For the reasons expressed in the Court's discussion of the term, "forward facing portion," the

Court defines "rear facing portion" and "rearward facing portion" as "a part of a garment that, when worn in a normal manner, appears on the back of the wearer."

f. Forward Facing Arm Portion

For the reasons expressed in the Court's discussion of the term, "forward facing portion," the Court defines "forward facing arm portion" as "a part of a garment that, when worn on the arm in a normal manner, appears on the front of the wearer."

g. Instrumentality

The parties agree that the term, "instrumentality," should be defined as "a device that during use may become entangled with a worn garment." The Court adopts the proposed definition and construes it as such.

III. Conclusion

Based on the foregoing, IT IS ORDERED that:

1. Plaintiff's Motion for Claim Construction be GRANTED IN PART AND DENIED IN PART [Docket No. 74].

Dated: Sept 11, 2002

JOAN E. LANCASTER
United States District Judge