UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robinson Labs, Inc.,

Plaintiff,

v.

Civ. No. 01-1604 (JNE/JGL)
ORDER

Walls Industries, Inc.,

Defendant.

---

Eric Chadwick, Esq., and Aaron Davis, Esq., Patterson, Thuente, Skaar & Christensen, P.A., appeared for Plaintiff Robinson Labs, Inc.

Ann Cathcart Chaplin, Esq., and Michael Florey, Esq., Fish & Richardson P.C., P.A., appeared for Defendant Walls Industries, Inc.

---

Robinson Labs brought this action against Walls Industries for patent infringement. The matter is before the Court on Walls' Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

Robinson Labs is the owner of United States Patent No. 5,695,835 ('835 Patent), which relates to a garment for bow hunters. The '835 Patent was assigned to Robinson Labs on December 9, 1997, from inventors Daniel and Marlene Weber. The Webers entered into the camouflage garment business in fall 1994. They were previously involved in the awning trade and were prompted to switch directions at an awning trade show in Indianapolis (Indianapolis show) where they viewed a three-dimensional leafy camouflaged outfit for hunters at a booth operated by Milliken, a fabric manufacturer. Milliken makes the outfit's fabric, which consists of a camouflage top layer and a net substrate underneath. The top layer is cut-up in leaf shapes and stitched down through the middle of the leaves onto the netting below. Daniel Weber

SEP 30 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED SEP 30 2003
DEPUTY CLERK'S INITIALS

transacted with Milliken to purchase a small amount of the three-dimensional leafy fabric to make his own version of the hunting suit. Weber's two-piece garment was not significantly different than the one he viewed at the Indianapolis show, and consisted of a hooded coat and pants. Weber first showed the garment at the Wisconsin Deer Classic, a trade show in Eau Claire, Wisconsin (Eau Claire show), in February 1995. At the Eau Claire show, Weber was approached by more than one bow hunter who apprised him that it was a safety hazard to have the three-dimensional leaves across the arms and chest of the garment because they could become entangled in the bow hunting instrumentality. The bow hunters queried whether it was possible to cut off some of the leaves. After the Eau Claire show, and before the Minneapolis show in March 1995, Weber inserted a flat panel of camouflage fabric across the forward facing arms and chest portion of the three-dimensional leafy suit to reduce the safety hazard to the bow hunters. The Webers submitted this invention in a patent application to the United States Patent and Trademark Office (PTO) on July 27, 1995. The Webers took orders and made this newly styled suit for the next several years. The '835 Patent issued to the Webers in December of 1997.

Walls has sold outdoor clothing and camouflage garments for over fifty years. On February 1, 2001, Robinson Labs informed Walls that one of Walls' jackets appeared to infringe upon the '835 Patent. The parties agreed upon a one-time license for the garments in question. As the parties attempted to reach a long-term licensing agreement, Walls redesigned its jacket, replacing the flat camouflage fabric with a dimpled camouflage fabric, to avoid Robinson Labs' infringement allegations. No long-term licensing agreement was reached and Walls began selling its redesigned jacket. Robinson Labs brought the instant action alleging that Walls' redesigned jacket infringes upon the '835 Patent. Walls now moves for summary judgment,

asserting that its redesigned jacket does not infringe, that the '835 Patent is invalid, and that there is no material question of fact that there was willful infringement.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Infringement

Analysis for a claim for patent infringement requires two steps: first, as a matter of law, the claim is defined as to scope and meaning, and second, as a question of fact, a determination is made whether the accused product falls within the scope of the claim. *Cybor Corp. v FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). By Order dated September 11, 2002, this Court defined the claims at issue in '835 Patent.

The invention claimed in the '835 Patent includes ten claims, two of which, Claims 1 and 7, are independent. The Claims describe a multi-dimensional garment with two different

portions: one made of two-dimensional fabric and the other made of three-dimensional fabric.

The '835 Patent claims:

> 1. A multi-dimensional camouflaged garment, the garment serving to camouflage a wearer thereof by presenting an external appearance to an observer that tends to be indistinguishable from the environmental feature against which the wearer is observed, comprising:
>
> a garment external surface, being viewable by an observer and having a first portion and a second potion;
>
> the first portion of the garment external surface being formed of a substantially three dimensional material; and
>
> the second portion of the garment external surface being formed of a substantially two dimensional material.
>
> * * *
>
> 7. A camouflaged garment to be worn by an archer, the garment substantially covering at least the torso and arms of the archer, the torso having at least a forward facing chest portion and each of the arms having a forward facing portion and a rearward facing portion, the garment serving to camouflage the archer by presenting an external appearance to an observer that tends to be indistinguishable from the environmental features against which the archer is observed, comprising:
>
> a multi-dimensional camouflaged garment exterior surface having a first portion and a second portion;
>
> the garment exterior surface first portion being formed of a two dimensional material, the two dimensional material forming the exterior surface of the garment substantially covering at least one forward facing arm portion and at least one half of the forward facing chest portion of the torso of the archer; and
>
> the garment exterior surface second portion being formed of a three dimensional material.

The dependent Claims, 2-6 and 8-10, act to orient the placement of the two portions, accommodating both left and right handed bow hunters.

The instant dispute involves the definitions given to the terms "three-dimensional" and "two-dimensional." Two-dimensional as related to the '835 Patent was construed as "having height and width and having a generally negligible thickness dimension in comparison to the height and width dimension thereof." Three-dimensional was construed as "offering depth and dimension that is apart from the thickness of the material used." It is undisputed that Milliken's leafy camouflage fabric is three-dimensional under this definition. The parties agree that if a

camouflage garment is constructed of two different kinds of three-dimensional materials and has no two-dimensional material, it would not infringe on the '835 Patent.

Next, the infringement inquiry compares the claimed invention with the allegedly infringing product. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 724 (Fed. Cir. 2002). Walls' and Robinson Labs' garments both consist in part of three-dimensional leafy camouflage fabric. They differ in that Walls uses a dimpled camouflage fabric in place of Robinson Labs' flat camouflage fabric. Walls claims they are entitled to summary judgment because their dimpled fabric falls within the definition of three-dimensional fabric, thereby creating an entirely three-dimensional garment. The Court disagrees. The dimpled fabric's dimension variance of between 114.2 microns – 1,143.5 microns is consistent with the Court's definition of "generally negligible thickness dimension." The Court concludes that a reasonable fact finder could not find the dimpled fabric to be three-dimensional. Viewing the evidence in a light most favorable to Robinson Labs, there is no issue of material fact that Walls' dimpled fabric is two-dimensional as construed under the claims of the '835 Patent. As such, Walls' motion is denied as to the issue of infringement.

**B. Invalidity**

Walls next argues that it is entitled to summary judgment on Robinson Labs' claim for patent infringement because the '835 Patent is invalid. A patent is presumed valid. 35 U.S.C. § 282 (2000). To overcome this presumption, a party must prove facts that support a determination of invalidity by clear and convincing evidence. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002); *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000). Walls asserts *inter alia* that the '835 Patent is rendered invalid by

prior art references because it is a derivation of invention and it is obvious. The Court addresses each inquiry separately.

*1. Derivation*

Walls first contends that it is entitled to summary judgment under 35 U.S.C. § 102(f) which provides that a person shall be entitled to a patent unless "he did not himself invent the subject matter sought to be patented." To establish derivation of invention, a party challenging a patent's validity must demonstrate by clear and convincing evidence two elements: (1) prior conception of the invention by another, and (2) communication of the conception to the patentee. *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). The determination of whether there was prior conception is one of law while the ultimate question of whether a patentee derived an invention is one of fact. *Id.*

Prior conception of the invention

Conception is the completion of the mental part of the invention. *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research." *Id.* at 1228. "The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention ...." *Id.* "An idea is definite and permanent when the inventor has a specific settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Id.* Here, the crux of this analysis is whether the bow hunters first conceived of the invention claimed by the '835 Patent. The bow hunters proposed to Weber that there was a safety hazard in Weber's suit because the three-dimensional leafy material interfered with their bow-hunting instrumentality. The bow hunters

put forth the idea of cutting off the leaves so as to remove the safety hazard. This was a specific settled idea addressing a solution to the problem at hand. Anyone with a pair of shears could reduce the invention to practice. Indeed, the evidence reflects that Weber produced the invention within weeks after the Eau Claire show, without additional research. The Court concludes that there is no material question of fact as to whether the bow hunters had conceived of an invention.

The question that follows is whether the bow hunters' conception is of the same subject matter as that claimed in the '835 Patent. As discussed above, the '835 Patent discloses a multi-dimensional garment having two parts—one fabricated of three-dimensional material and the other of two-dimensional material. The '835 Patent teaches, through the dependent claims, that the flat fabric may be placed in different configurations on the forward facing portion of the garment to accommodate left-handed or right-handed bow hunters. While Weber made his garment with matching two-dimensional and three-dimensional camouflage fabric, the '835 Patent explicitly suggests that a preferred embodiment may be found where the leaves are cut off from the three-dimensional leafy fabric which would leave only the net substrate. That is the precise construction identified by the bow hunters.

Robinson Labs contends that Walls has not sufficiently corroborated prior conception to meet the burden of clear and convincing evidence. Generally, in cases of derivation, a requirement exists that testimony as to prior conception must be corroborated. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1577-78 (Fed. Cir. 1997). In the unique facts of this case, the evidence of prior conception comes from the patentee himself. While any corroborating evidence necessarily pales in comparison to Weber's own admissions, his conduct after the Eau Claire show—quickly developing a bow-hunter safe garment to show the next month at the Minneapolis show—serves to corroborate his testimony. The Court therefore

concludes that the bow hunters' communication constitutes prior conception of the invention claimed in the '835 Patent.

Communication of conception

The second prong of the test for derivation requires communication of the prior conception. Communication of the prior conception must be sufficient to enable one of ordinary skill in the art to construct and successfully operate the invention. *Id.* at 1578. The record is undisputed that the bow hunters communicated the idea to Weber at the Eau Claire show, and that shortly thereafter, Weber successfully constructed the garment.

In short, the Court concludes as a matter of law that there was prior conception of invention, and it is undisputed that there was communication to Weber of the prior conception. No reasonable finder of fact could conclude that the '835 Patent was not derived from the bow hunters' prior conception. Therefore, the Court grants Walls' motion on the issue of validity by derivation of invention.

2. *Obviousness*

A patent is invalid as obvious under 35 U.S.C. § 103 if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *Id.* § 103(a). A court makes this determination as a matter of law based on underlying findings of fact. *Beckson Marine*, 292 F.3d at 725. In *Graham v. John Deere Co.*, 383 U.S. 1 (1966), the United States Supreme Court put forth the four underlying factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) secondary considerations, if any, of nonobviousness. *Id.* at 17-18. A district court may properly grant summary judgment on the ground that a patent is obvious when the underlying

factual inquiries present no genuine issues of material fact. *See Beckson Marine*, 292 F.3d at 723.

Scope and content of prior art

The relevant prior art is that which is reasonably pertinent to the particular problem with which the inventor was involved. *In re GPAC Inc.*, 57 F.3d 1573, 1577 (Fed. Cir. 1995). The relevant prior art is not limited to the field of the inventor's endeavor, but encompasses any analogous arts as well. *Id.* at 1577-78. The inventor's field of endeavor in this case is the manufacture of camouflage garments and accessories.

For the instant case, there are two relevant prior patents that relate to the manufacture of camouflage garments, both of which were considered by the PTO Examiner during prosecution of the '835 Patent. A patent examiner's consideration of prior patents during the course of a patent application does not preclude a court from using those same patents in an obviousness determination, though it makes the court's task more challenging. *See Bose Corp. v. JBL, Inc.* 112 F. Supp. 2d 138, 152 (D. Mass. 2000). Here, U.S. Patent No. 4,517,230 to Crawford (Crawford) and U.S. Patent No. 4,931,320 to Leonard (Leonard), are relevant prior art for the purposes of this analysis. Crawford describes a camouflage garment comprised of two-dimensional and three-dimensional elements. Crawford discloses a primarily two-dimensional camouflage garment upon which three-dimensional branches are attached with adhesive strips. Thus, the wearer has the flexibility to add or remove the amount of foliage necessary to approximate his environmental surroundings. Leonard discloses the three-dimensional leafy product fabricated by Milliken and used by Weber for the garment he displayed at the Eau Claire show. The parties agree that Weber did not invent either the fully three-dimensional leafy suit or the fabric itself.

Walls asserts that Weber's conversation with the bow-hunters is also a prior art reference that should fall within the scope of relevant prior art. The PTO Examiner did not consider this reference when reviewing the '835 Patent application. As discussed above, there is no dispute that the bow-hunters relayed to Weber the problem which the '835 Patent addresses. This communication teaches not only the inherent safety hazard in having three-dimensional leafy fabric in the chest and arm areas, but also that a solution is to cut the leaves off. "If a reference disclosure relates to the same problem as that addressed by the claimed invention, that fact supports use of that reference in an obviousness rejection." *In re GPAC*, 57 F.3d at 1578; *see also Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1403-04 (Fed. Cir. 1997) (finding non-public disclosures to inventor may be considered prior art for purposes of obviousness analysis). In light of the likeness of the bow hunters' communicated solution to the claimed invention, the communication is relevant prior art.

The level of ordinary skill in the prior art

The person of ordinary skill in the art is a hypothetical person who is presumed to know the relevant prior art. *Custom Accessories, Inc. v. Jeffrey-Allen Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986). A court making this determination may consider "the type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology and educational level of active workers in the field." *Id.*

The limited evidence in the record reflects the ordinary skill associated with the manufacture of camouflaged garments is an understanding of pattern construction and familiarity with fabrics and fabrication of products using industrial fabrics. Looking at the time of the invention, the hypothetical person in this case would be skilled in garment construction and manufacturing, as well as familiar with camouflage fabrics and their uses. They would be

familiar with Leonard and Crawford and they would have been privy to the communication made by the bow hunters to Weber.

Differences between the claimed invention and the prior art

Comparing differences between the claimed invention and prior art references focuses on determining whether one of skill in the art would have considered the invention obvious at the time of invention. *Beckson Marine*, 292 F.3d at 726. A court may not use hindsight to render obvious a patented invention. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1051 (Fed. Cir. 1988). If, in order to find an invention obvious, the court must select and combine prior art references, there must be a reason or motivation, other than hindsight, to make the combination. *Id.* This motivation to combine elements may be expressly stated or may be "shown by reference to the prior art itself, to the nature of the problem solved by the claimed invention or the knowledge of one of ordinary skill in the art." *Beckson Marine*, 292 F.3d at 728.

Here, the teachings of Crawford and Leonard, plus the prior art reference of the bow hunters' communication render the '835 Patent obvious. Weber's testimony reveals that the bow hunters not only suggested the problem to be solved, but also the solution. The bow hunters' statements provide ample motivation to combine the teachings to produce a garment safe for bow hunters to wear. At the time of the invention, one of ordinary skill would have found the claimed invention obvious and would have been motivated to combine the references as Weber did. One of ordinary skill would know from the teachings of Crawford to mix and match textures, and together with the bow hunter's communication, to create a flat surface where the bow instrumentality crosses the arms and chest of a bow hunter. The '835 Patent is slightly broader than the bow hunters' suggestions in that it encompasses a multitude of configurations for right-handed and left-handed bow hunters and lists embodiments that involve fabrication other than

cutting off the existing leaves. This, however, is not fatal to a claim of obviousness because the prior art references need not anticipate the invention as to every claim. *See Beckson Marine*, 292 F.3d at 727. Viewed in the light most favorable to Robinson Labs, the record reveals that the subject matter of the '835 Patent would have been obvious to a person having ordinary skill in the art at the time of the claimed invention.

<u>Secondary considerations—objective evidence of nonobviousness</u>

Secondary considerations include objective evidence such as indicia of commercial success of the patented invention, long-felt but unsolved need, and the failure of others to produce alternatives to the patented invention. *In re GPAC*, 57 F.3d at 1580 (citing *Graham*, 383 U.S. at 17-18). If such evidence exists in the record, it is error for a court not to consider it in an obviousness inquiry. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983). This is because "evidence of secondary considerations may often be the most probative and cogent evidence in the record." This evidence may establish that an invention appearing to have been obvious in light of the prior art was not. *Id.* at 1538. "For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *In re GPAC*, 57 F.3d at 1580.

Neither party addresses this prong of the obviousness inquiry. The Court's own review of the record reveals limited evidence of secondary considerations relating to commercial success. First, the Webers' records indicate that there was a moderate increase in their sales, though they fail to specify what portion is attributable to the claimed invention as opposed to other items in their product line. Next, Walls' design of the allegedly infringing garment at issue in this case suggests some measure of commercial success. *See Bose*, 112 F. Supp. 2d at 156 (finding defendant's adulation of plaintiff's product constitutes evidence of commercial success).

Finally, the record reflects that Walls and Robinson Labs executed a one-time license agreement. The agreement was executed after Walls had received an order and was in the process of manufacturing the garments for delivery. The Federal Circuit Court of Appeals in *Stratoflex* noted that "[r]ecognition and acceptance of the patent by competitors who take licenses under it to avail themselves of the invention is evidence of nonobviousness." *Stratoflex*, 713 F.2d at 1539. Here, whether the license agreement arose out of Walls' desire to avail itself of the benefits of the patented invention, or whether Walls executed it so as to facilitate timely delivery of ordered garments are questions that the record does not answer.

From this limited showing, the Court does not discern a nexus between the objective evidence of nonobviousness and the merits of the claimed invention. Thus, the secondary considerations do not weigh against the Court's determination that the '835 patent was obvious at the time of invention. Viewed in the light most favorable to Robinson Labs, the record reveals that the '835 Patent is invalid as obvious. Accordingly the Court grants Walls' motion.

**C. Willful Infringement**

Because the '835 Patent has been found to be invalid, the Court declines to address the claims of willful infringement.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Walls' Motion for Summary Judgment [Docket No. 131] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 30, 2003

JOAN N. ERICKSEN
United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*